Law Office of Sander D. Friedman, LLC
Wesley G. Hanna, Esquire
125 North Route 73
West Berlin, New Jersey 08091
Tel. (856) 988-7777
Attorneys for Plaintiff Lorraine Z. Waitkus

| | |
|---|---|
| Lorrzine Z. Waitkus | Civil Case Number: |
| *Plaintiff*, v. | Civil Action |
| Galaxy Asset Purchasing, LLC; Ecast Settlement Corp.; Mercantile Adjustment Bureau, LLC; Creditors Interchange Receivable Management, LLC; John Doe Individuals and Entities A-Z; John Roe Individuals A-Z; John Woe Entity | **Class Action Complaint** |
| *Defendants*. | |

Plaintiff hereby complains against Defendants as follows:

**The Parties**

1. Plaintiff Lorraine Z. Waitkus is an individual residing in Bergen County, New Jersey.

2. Galaxy Asset Purchasing, LLC is a limited liability company that purchases debts for the purpose of collection.

3. Ecast Settlement Corp. is corporation that purchases debts for the purpose of collection.

4. Mercantile Adjustment Bureau, LLC is a limited liability company in the business of debt collection.

5. Creditors Interchange Receivable Management, LLC is a limited liability company

       in the business of debt collection.

6. John Doe Entities and Individuals A-Z companies are debt collectors, like Galaxy Asset Purchasing and Ecast Settlement Corp., use Mercantile Adjustment Bureau and/or Credtiros Interchange Receivable Management for debt collection services.

7. John Roe individuals are owners, opperators, employees, and/or other individuals that participated in the wrongdoing of the above listed Defendants.

8. Upon information and belief, Mercantile Adjustment Bureau, LLC and Creditors Interchange Receivable Management, LLC are two faces of the same entity. John Woe Entity is that entity.

### Jurisdiction and Venue

9. Jurisdiction is proper in the Federal District Court as the case is premised upon a federal question as defined under 28 U.S.C. 1331, to wit, application and interpretation of the Fair Debt Collection Practices Act, 15 U.S.C. 1692 et. seq.

10. Venue is proper in Newark because a substantial part of the events giving rise to Plaintiff's claims took place in the scope of the Newark vicinage.

### Factual Basis of Plaintiff's Claims

11. This case concerns two apparently associated debt collectors that ignore and attempt to circumvent the Fair Debt Collection Practices Act validation requirements: Defendant Mercantile Adjustment Bureau, LLC ("Mercantile") and Creditors Interchange Receivable Management, LLC ("Creditors Interchange"). When a validation request or dispute pursuant to 15 U.S.C. 1692g is sent to either, no response is provided. Debt collection efforts then resume by the other as if no validation request was ever sent.

12. Galaxy Asset Purchasing, LLC ("Galaxy"), Ecast Settlement Corp. ("Ecast"), and John Doe Entitles and Individuals A-Z are clients of Mercantile and Creditors Interchange. These entities are in the business of purchasing debt for the purpose of collection, are subject to the Fair Debt Collection Practices Act, and are vicariously liable for the Fair Debt violations of their debt collector agents.

13. Defendants' abusive, deceptive, and otherwise unlawful practice became apparent in connection with attempts to collect two separate and unrelated purported debts. The first is a purported debt originally claimed against Plaintiff Lorraine Waitkus by Citibank, N.A ("Citibank"). The second is a purported debt originally claimed

against Ms. Wiatkus by Bank of America ("BOA"). To the extent the debts claims are valid, the credit extended in both cases was primarily for personal, family, and household purchases.

14. In November of 2011, Ms. Waitkus received a debt collection notice from Mercantile. The notice concerned the purported Citibank debt. The notice indicated that the debt had been purchased by Galaxy and that the debt collection effort was being pursued on Galaxy's behalf. The notice listed a return address in the upper right hand corner of "6341 Inducon Drive E., Sanborn, NY"

15. Within 30 days of receipt, Ms. Waitkus exercised her Fair Debt Collection Practices Act right to dispute the validity of the debt and request validation.

16. Mercantile never responded. This failure to provide validation a represents a violation of 15 U.S.C. 1692g(b) by Mercantile in and of itself.

17. In March of 2012, Ms. Waitkus received a debt collection notice fromCreditors Interchange. Like the notice from Mercantile, the notice concerned the purported Citibank debt. Like the notice from Mercantile, the notice indicated that the debt had been purchased by Galaxy Asset Purchasing, LLC ("Galaxy") and that the debt collection effort was being pursued on Galaxy's behalf. This represents a violation of 15 U.S.C. 1692g(b) on part of Galaxy in and of itself.

18. Within 30 days of receipt, Ms. Waitkus exercised her Fair Debt Collection Practices Act right to dispute the validity of the debt and request validation.

19. Like Mercantile, Creditors Interchange never responded. This failure to provide validation a represents a violation of 15 U.S.C. 1692g(b) by Creditors Interchange in and of itself.

20. Then it was Mercantile's turn again. In July of 2012, Ms. Waitkus received what purported to be an initial - but was actually her second - collection notice from Mercantile concerning the purported Citibank debt. Obviously, the notice came subsequent to Ms. Waitkus request for validation. Like the notices from Mercantile and Creditors Interchange that came before, the notice indicated that the debt had been purchased by Galaxy Asset Purchasing, LLC ("Galaxy") and that the debt collection effort was being pursued on Galaxy's behalf. This represents a violation of 15 U.S.C. 1692(g)(b) by Mercantile and a second violation of 15 U.S.C. 1692g(b) on part of Galaxy in and of itself.

21. A relationship between Mercantile and Creditors Interchange was evident from that

fact that the Creditors Interchange collection notice listed a return address in the upper right hand corner of "6341 Inducon Drive E., Sanborn, NY" - the same return address listed in the upper right hand corner of both Mercantile notices. Upon information and beleif, Mercantile and Creditors Interchange are either two faces of the same entity or two entities engaged in a civil conspiracy to circumvent Fair Debt validation rights.

22. The relationship between Mercantile and Creditors Interchange is further demonstrated by the handling of collection effort in connection with the BOA debt.

23. In November of 2011, Ms. Waitkus received a debt collection notice from Creditors Interchange. The notice concerned the purported BOA debt. The notice indicated that the debt had been purchased by Ecast and that the debt collection effort was being pursued on Ecast's behalf. Like both of the collection notices sent to Ms. Waitkus in connection with the purported Citibank debt, the notice listed a return address in the upper right hand corner of "6341 Inducon Drive E., Sanborn, NY"

24. Within 30 days of receipt, Ms. Waitkus exercised her Fair Debt Collection Practices Act right to dispute the validity of the debt and request validation.

25. Creditors Interchange never responded. Instead, Creditors Interchange sent Ms. Waitkus correspondence indicating that the validation request was received, that responding to the request might take up to or more than 30 days, inviting Ms. Waitkus to contact Creditors Interchange, and expressly advising Ms. Waitkus that the correspondence was an attempt to collect a debt. This failure to provide validation and attempt to collect a debt represents a violation of 15 U.S.C. 1692g(b) by Creditors Interchange in and of itself.

26. In July of 2012, Ms. Waitkus received a collection notice from Mercantile. Like the Creditor's Interchange notice, it indicated that the debt had been purchased by Ecast and that the debt collection effort was being pursued on Ecast's behalf. Like both of the collection notices sent to Ms. Waitkus in connection with the purported Citibank debt and the earlier Creditors Interchange notice sent in connection with the purported BOA debt, the notice listed a return address in the upper right hand corner of "6341 Inducon Drive E., Sanborn, NY".

27. Shortly thereafter, Ms. Waitkus exercised her Fair Debt Collection Practices Act right to request validation.

28. Neither Mercantile nor Creditors Interchange has ever validated Ms. Waitkus debts notwithstanding her repeated demands.

29. Both Mercantile's and Creditors Interchange's collection notice are deceptive and misleading because the least sophisitcated consumer would understand the notices as being from two seperate and un-affiliated collection agents.

30. Mercantile's and Creditors Interchange's merry-go-round scheme to circumvent Fair Debt validation rights involves the participation of Joe Roe Individuals A-Z.

## CLASS ALLEGATIONS

**Violation of the Fair Debt Collection Practices Act, 15 U.S.C. 1692; vicarious liability, and civil conspiracy**

31. The above recitations are hereafter incorporated by reference.

32. Upon information and belief, Defendants Mercantile and Creditors Interchange collect a large number of debts for a number of debt collector clients, including Galaxy, Ecast, and John Doe Entities and Individuals A-Z.  Galaxy, Ecast, and John Doe Entities and Individuals A-Z are vicariously liable for Mercantile's and Creditors Interchange's wrongdoing because Mercantile and Creditors Interchange pursuant to the doctrine of respondeat suprior.

33. Upon information and belief, a large number of consumers request validation from Mercantile, Creditors Interchange, or both.

34. Defendants Mercantile and Creditors Interchange are either affiliated separate entities or two faces of the same entity.

35. To the extent, Mercantile and Creditors Interchange are two faces of the same entity, Mercantile and Creditors Interchange have a pattern and practice of violating the Fair Debt Collection Practices Act by ignoring validation requests, continuing collection efforts after receiving validation requests but prior to providing consumers, and/or attempting to mislead consumers into believing they are being subject to debt collection efforts by two distinct collection agents.

36. To the extent Mercantile and Creditors Interchanges are affiliated separate entities, the two are engaged in a civil conspiracy to undermine the Fair Debt Collection Practices Act validation rights.  There is an agreement between the two to engage to engage in the unlawful practice of continuing collection

        notwithstanding an unfulfilled demand for validation by a consumer.

37. Either way, Mercantile's and Creditors Interchanges' collection notices are misleading and deceptive because the least sophisticated consumer is likely to see the notices as coming from two seperate and unrelated entities when in fact the two entities are either closely affiliated or two faces of the same entity.

38. Whether or Mercantile and Creditors Interchange are one entity, co-conspirators, or neither; one or both engage in a pattern or practice of ignoring validation demands.

39. Whether or Mercantile and Creditors Interchange are one entity, co-conspirators, or neither; Galaxy and Ecast have both violated the Fair Debt Collection Practices Act by having one collection agent continue debt collection activities without fulfilling a validation demand received by a first collection agent.

40. In addition to and independent of the above described violations, Mercantile has a pattern or practice of abusing consumers by sending consumers second "initial" collection notices after the first notice. This practice violates the Fair Debt Collection Practices Act because sending a second notice purporting to be an initial notice is deceptive and misleading. This practice also violates the Fair Debt Collection Practices Act whenever the second notice follows an unfulfilled demand for validation.

41. Upon information and belief, numerous consumers request validation, have been subject to subsequent Mercantile and/or Creditor Interchange collection efforts and/or have been subject to Mercantile's practice of sending a     subsequent collection notice.

42. Common questions of law and fact exist as to all members of the class or classes that predominate over any questions affecting any individual class members.

43. Common questions of law and fact include, but may not be limited to:

    a. Whether Mercantile and Creditors Interchange are engaged in a civil conspiracy or simply two faces of the same entity;

    b. Whether Mercantile's and Creditors Interchange's merry-go-round scheme to circumvent validation rights violates the Fair Debt Collection Practices Act

    c. Whether Mercantile and/or Creditors Interchange has a pattern or

       practice of failing to satisfy validation demands.

    d.    Whether Mercantile's and Creditors Interchange's collection notices violate the Fair Debt Collection Practices Act by making it seem as if the two separate and unrelated entities are engaged in distinct collection efforts.

    e.    Whether Galaxy and/or Ecast violated the Fair Debt Collection Practices Act by using a second agent to engage in collection activities against consumers that demanded validation against a first agent without first fulfilling the consumers' demand.

    f.    Whether Mercantile violated the Fair Debt Collection Practices Act by sending consumers second "initial" collection notices

    g.    Whether Mercantile violated the Fair Debt Collection Practices Act by resuming collection activities despite failing to fulfill consumers' validation demands.

44.    Plaintiff's claims are typical of the claims of the class(es) as she was subject to the notices and collection activities.

45.    Plaintiff has the same interest as all other members of the class(es) - ensuring Defendants comply with all laws affecting the collection of consumer debts.

46.    Plaintiff will fairly and adequately represent and protect the interest of the class(es).

47.    Plaintiff has retained counsel with experience in class action litigation, as well as other complex litigation. The interests of the Plaintiff is coincident to, and not antagonistic to, the interest of other members of the class(es).

48.    The questions of law and fact common to members of the class predominant over any questions affecting individual class members and class litigation is the superior method to adjudicate the common questions. The prosecution of separate actions by individual members of the class would result in duplicitous litigation over the same issues and possibly create a risk of inconsistent or varying adjudications that could result in establishing inconsistent standards of conduct, policies and/or procedures for the Defendants. The Defendant's notices and collection activities affect all class members identically. The class action mechanism is superior to other available methods for the fair

and efficient adjudication of this controversy.

49.     Neither Plaintiff, nor her counsel, will have difficulty managing their respective roles in prosecuting this action as a class action.

*Wherefore*, Plaintiffs request judgment as follows:

a. Certifying this matter as a class action, with multiple classes, or sub-classes, as may be appropriate;
b. Awarding such sums as appropriate under *15 U.S.C. 1692k*;
c. Awarding counsel fees and costs of suit;
d. Awarding pre-judgment interest;
e. Awarding other such relief as the Court may deem fair and equitable.

## Individual Claims

## Violation of the Fair Debt Collection Practices Act, 15 U.S.C. 1692; vicarious liability, and civil conspiracy

50.     The above allegations are hereafter incorporated by reference.

*Wherefore*, Plaintiffs request judgment as follows:

a. Awarding such sums as appropriate under *15 U.S.C. 1692k*;
b. Awarding counsel fees and costs of suit;
c. Awarding pre-judgment interest;
d. Awarding other such relief as the Court may deem fair and equitable.

/s/ Wesley G. Hanna
Wesley G. Hanna, Esq.
(WH-9019)